# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 21-1181V**

JANET HAGOS,

Petitioner,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent.

Chief Special Master Corcoran

Filed: October 7, 2026

*Courtney Christine Jorgenson, Siri & Glimstad, LLP, Phoenix, AZ, for Petitioner.*

*Nina Ren, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION DISMISSING PETITION[1]

On April 9, 2021, Janet Hagos filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that as a result of an influenza ("flu") vaccine she received on January 23, 2021, she suffered a shoulder injury related to vaccine administration ("SIRVA") as defined by the Vaccine Injury Table (the "Table"). Petition (ECF No. 1) at Preamble. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

[1] Because this ruling and decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means this Ruling/Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons set forth below, I conclude that Petitioner has not established by preponderant evidence that she suffered the residual effects or complications of such illness, disability, injury, or condition for more than six months after administration of the vaccine – the "severity requirement" applicable to all Program cases. It is therefore appropriate to dismiss this matter now, rather than transfer out of SPU for additional proceedings.

## I. Relevant Procedural History

The claim was initiated on April 9, 2021, and relevant medical records were filed subsequently between June 25, 2021, and November 13, 2023. ECF Nos. 11, 12, 21, 39 and 40, Ex. 1 – 9, 14 - 16. Additionally, Petitioner filed statements from her sisters, Mical Hagos and Nisan Hagos, in support of her SIRVA injury. ECF Nos. 34, Ex. 10 – 11.

Petitioner filed a Motion for a Decision on the Record on November 16, 2023, arguing that she has met the severity and onset requirements and otherwise established entitlement to compensation for a SIRVA Table Injury. Petitioner's Motion for Decision on the Record ("Mot."), ECF No. 42. Petitioner requests that she be awarded compensation in this case. *Id.* at 10.

Respondent opposed the Motion on January 8, 2024, in his Rule 4(c) Report, arguing that Petitioner could not establish certain SIRVA elements, or that she suffered residual effects of the alleged injury for more than six months after vaccination. Respondent's Response to Petitioner's Motion for Ruling on the Record ("Opp."), ECF No. 43. Petitioner filed her reply on January 15, 2024. Petitioner's Reply to Response to Motion for Decision on the Record ("Reply"), ECF No. 44. The matter is ripe for resolution.

## II. Relevant Medical History

### 1. Medical Records

Petitioner, a 22-year-old nursing student, received a flu vaccine on January 23, 2021, in her left deltoid. Ex. 5 at 6. At the time, Ms. Hagos was enrolled in a CNA nursing program requiring her to work on skills in a hospital setting, including having to perform some physical activity in working with patients. Ex. 1 at 1-2. Petitioner's medical records do not indicate the existence of any prior left shoulder injuries.

On March 7, 2021 (47 days post vaccination), Ms. Hagos had a telehealth visit with Dr. Brian Leo at an urgent care clinic within the Santa Clara Valley Health and Hospital System (Santa Clara Valley Health). Ex. 6 at 4. Petitioner complained of "left shoulder pain for a month." *Id*. She recalled pain "after having [a] flu shot a month ago" and

described the pain and "continuous and sharp mild to moderate pain." *Id*. Ms. Hagos stated her pain was "NOT at the injection site" but involved her whole shoulder. *Id*. Petitioner stated that she was "very active" but did not lift, carry heavy items, or perform push-ups. *Id*. Dr. Leo assessed Ms. Hagos with acute left shoulder pain and noted "[u]nclear etiology but not related to flu shot." *Id*. at 5. He recommended over-the-counter treatment, prescribed naproxen (a nonsteroidal anti-inflammatory drug (NSAID)), and advised Petitioner to return for an in-person evaluation in two weeks if conservative treatment failed. *Id*.

On July 9, 2021, Ms. Hagos established care with primary care provider (PCP) Rajalakshmi Kalimuthu, M.D., via telehealth at Santa Clara Valley Health. Ex. 7 at 37. Petitioner reported a plugged sensation in her ears and worsening face acne, but did not mention any left shoulder issues. *Id*.

On August 6, 2021, Ms. Hagos was seen (in-person) by Dr. Kalimuthu for an annual exam, left foot pain, and a follow up of complaints of ear pain. Ex. 7 at 29. Petitioner was instructed to rest and ice her foot. A "bilateral ear wax removal" was also performed. *Id.* at 33. Petitioner underwent x-rays for her left foot on August 13, 2021. *Id*. at 25. There is no mention of left shoulder pain at either visit.

Ms. Hagos received COVID-19 vaccines on September 2, 2021, September 24, 2021, and May 4, 2022. Ex. 8 at 3. All vaccinations were administered in her left deltoid (the arm alleged to have been injured by the vaccination at issue).

Ten and a half months post-vaccination (December 7, 2021), Ms. Hagos had an initial acne telehealth consultation with a Santa Clara Valley Health dermatologist. Ex. 8 at 29. Her primary concern was "some residual forehead acne [and] acne scarring." *Id*. There is no mention of left shoulder pain in the notes from this visit. And on December 13, 2021, Ms. Hagos had a virtual visit for preventive health examination and follow-up regarding mental health services. Ex. 7 at 21-23. There is no mention of shoulder pain at this visit.

On January 28, 2022, Petitioner attended an appointment with another Santa Clara Valley Health internal medicine provider, Sandhya Matha, M.D. Ex. 7 at 11. Dr. Matha wrote that Petitioner reported a constant and dull *right* shoulder pain that went "down to the hand" and that had "last[ed] for about [ten] days" (i.e., beginning on or about January 18, 2022). *Id*. Dr. Matha wrote that Petitioner reported a "similar pain in the right thigh" that traveled "down to the foot." *Id*. Additionally, Dr. Matha wrote that Ms. Hagos felt a "numb, pins and needles sensation." *Id*. Dr. Matha noted that Petitioner complained of "neuropathic symptoms which occur[red] before the onset of [her] menstrual cycle," and advised Ms. Hagos to "[o]bserve if they occur with the next menstrual period." *Id*. at 12.

Dr. Matha diagnosed Petitioner with chronic right shoulder pain and prescribed naproxen. *Id*. The visit was conducted as a virtual visit due to the ongoing pandemic. *Id.* There is no mention of *left* shoulder pain or pain from the January 2021 flu shot.

On February 16, 2022, Ms. Hagos had a follow-up appointment with a different treater for depression. Ex. 7 at 5. She also reported right arm pain that extended from her "[s]houlder to hand [and] numb[ness] and tingling." *Id*. She recalled her pain began two months prior (i.e., around December 16, 2021) and had resolved on its own, but returned one month prior (i.e., around January 16, 2022). *Id*. Ms. Hagos reported that her pain "[w]ent away after [one] dose" of naproxen. *Id*. at 6-7. The treater noted that Petitioner's symptomology was consistent with radiculopathy. *Id*. There is no specific mention of her left shoulder pain or pain from the January 2021 flu shot.

On March 4, 2022, Ms. Hagos was seen by Dr. Eon Joseph Rios in follow-up regarding her acne. 8 at 13. A treatment plan was discussed. *Id*. There is no notation of any shoulder pain at this visit.

On March 17, 2022, Petitioner had a telehealth appointment with Dr. Aditi Chandra for left shoulder pain. Ex. 8 at 9. It was noted that Petitioner's shoulder pain as been "off-and-on for [the] last few months". *Id.* at 9. Petitioner was requesting to have a physical therapy referral to "work on her shoulder." *Id*. As it was a virtual visit, no physical examination was performed. Dr. Chandra gave Petitioner the requested referral to PT. *Id*.

It does not appear that Ms. Hagos pursued any PT for her left shoulder until another year and four months later, on July 24, 2023. During that intervening period, Ms. Hagos saw numerous providers and attended PT on several occasions for other medical conditions. Ex. 15 at 89 (November 4, 2022 dermatology office visit); *id*. at 71 (March 2, 2023, in-person urgent care visit for right ankle pain); *id*. at 68 (March 3, 2023 right ankle x-ray); *Id*. at 55-56, 64 (March 9, 2023 routine in-person gynecological exam and Tdap vaccination); *Id*. at 41 (March 22, 2023 dermatology visit); Ex. 16 at 3-8 (April 11 and 18, 2023 PT visits for ankle pain); Ex. 8 at 4 (April 18, 2023 visit for depression); Ex. 15 at 31, 35 (April 26 and May 31, 2023 dermatology visits); Ex. 14 at 2-7 (June 27 and July 5, 2023 in-person acupuncture visits for "chronic right hip, right leg, and right arm pain due to trauma"); Ex. 15 at 7 (July 19, 2023 dermatology visit). In addition, on March 9, 2023, Ms. Hagos received a tetanus-diphtheria-acellular pertussis (Tdap) vaccine in her left deltoid without any noted adverse effects. Ex. 15 at 55-64.

On March 13, 2023, Ms. Hagos filed an "Amendment Request Form" for Santa Clara Medical Center. Ex. 12, ECF No. 35. Petitioner requested to have her medical records from the January 28, 2022 telehealth visit amended to reflect her shoulder pain as being in the *left* shoulder, not the *right* shoulder as the notes indicate. *Id.* The request

form does not reflect a date completed, submitted or received by the medical center. Additionally, the form is listed on the bottom as "page 1 of 2." *Id.* Page 2 of the document is missing. Petitioner included a typed letter she included with the medical request form. Ex. 13. This letter is signed by Ms. Hagos and has a handwritten date of February 26, 2023. *Id.* Ms. Hagos also filed a supplemental sworn statement stating that she never had any issues with her right shoulder and that the reference to pain in her right shoulder "is in error." Ex. 9 at 1. No amended records reflecting a change are included in the records.

On July 24, 2023, Ms. Hagos attended physical therapy sessions at PhysioFit Physical Therapy for "pain in left shoulder" and "cervicalgia." Ex. 16 at 39. Petitioner stated that

> "[m]y issues started January of 2021 when I received a flu shot on my left shoulder. I was told the soreness and pain would not last more than a few days. But I was in excruciating pain for well over a month. I received an anti-inflammatory drug from a medical provider which helped. After I stopped taking it, the pain came back. Some days I don't feel pain but more often than not, it interrupts my daily activities.

*Id*. at 40. Ms. Hagos stated that her "primary concern is developing other issues such as carpal tunnel from neglecting the pain for so long. I also have been compensating by using other parts of my body so as to not use the left side. As a result, I have been experiencing back pain and even pain in my neck and the right side of my body." *Id.* at 40. Petitioner is noted as having "postural dysfunction, soft tissues and joint restrictions, and L post lat shoulder pain with poor movement patterns." *Id.* at 41.

Ms. Hagos attended four more physical therapy sessions on August 7 and 21, September 15, and November 8, 2023. *Id.* 20-26. By August 21, 2023, Petitioner stated that she has "been doing exercises, so feeling better." *Id.* at 26.

There are no additional medical records filed in Petitioner's case after November 13, 2023.

**2. Affidavit Evidence**

Ms. Hagos submitted a sworn statement, dated April 9, 2021, alleging that she experienced pain in her left shoulder within 24 hours of receiving a flu vaccine on January 23, 2021. Ex. 1 at 1. She stated that she "was a physically health 22-year old college student" who was attending nursing school. *Id.* Ms. Hagos explained that the nurse who administered the vaccine "warned me that I would feel discomfort and soreness in my left shoulder." *Id*. Petitioner stated that in addition to these symptoms, she experienced

progressing pain, weakness, impaired mobility, and a constant dullness which has lingered.

Ms. Hagos also filed two sworn statements from her sisters, Mical and Nian Hagos. Exs. 10 and 11. Mical Hagos stated that she saw her sister approximately two days after vaccination, and that Petitioner complained that her arm was "really sore." Ex. 10 at 1. Because Petitioner's symptoms persisted for more than a week, Mical suggested that Petitioner see a doctor. *Id*. Mical stated that Petitioner still has issues with driving, carrying luggage, and travel because of her left shoulder pain. *Id.* Nian Hagos stated that Petitioner experienced a "dull ache and pain" after the January 2021 flu vaccine which has "limited [Petitioner's] life and interfered with her daily activities." Ex. 11 at 1.

## III. Parties' Respective Arguments

Petitioner argues that the medical records and witness statements clearly demonstrate that she suffered a SIRVA injury following receipt of a flu vaccine on January 23, 2021. Mot. at 8-9. Respondent argues that Petitioner's claim fails for several reasons. Petitioner has filed to satisfy the six-month severity requirement, but also cannot show by a preponderance of evidence that the onset of her shoulder pain occurred within 48 hours of vaccination and thus, the Table SIRVA injury requirements cannot be met. Opp. at 14 15. Respondent further argues that Petitioner has not established a cause-in-fact claim. *Id*. at 15. Petitioner filed a reply stating that "her symptoms have persisted for longer than six months, and that she has successfully demonstrated a causation-in-fact claim." Reply at 11. Petitioner requests compensation be awarded for her claim. *Id.*

## IV. Applicable Law

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs*., No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs*., 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs*., 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs*., No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs*., 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v.*

*Sec'y of Health & Hum. Servs*., 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## ANALYSIS

Petitioners not asserting a vaccine-related death or other injury requiring a surgical intervention and inpatient care must demonstrate that they suffered the residual effects or complications from their vaccine-related injury for more than six months. Section 11(c)(1)(D); *Cloer v. Sec'y of Health & Hum. Servs*., 654 F.3d 1322, 1335 (Fed. Cir. 2011). Petitioners bear the burden of establishing this preponderantly. *Song v. Sec'y of Health & Hum. Servs*., 31 Fed. Cl. 61, 65–66 (1994), *aff'd*, 41 F.3d 1520 (Fed. Cir. 1994). They cannot establish the length or ongoing nature of an injury solely through personal statements, but rather must "submit supporting documentation which reasonably demonstrates that the alleged injury or its sequelae lasted more than six months . . ." *Black v. Sec'y of Health & Hum. Servs*., 33 Fed. Cl. 546, 550 (1995), aff'd, 93 F.3d (Fed. Cir. 1996).

While even mild symptoms that do not require intensive medical care may satisfy the severity requirement, evidence of ongoing medical treatment for conditions unrelated to an alleged vaccine injury does not. *Compare Wyatt v. Sec'y of Health & Hum. Servs.*, No. 14-706V, 2018 WL 7017751, at *22–23 (Fed. Cl. Spec. Mstr. Dec. 17, 2018) (petitioner's post-vaccination GBS resolved within three months; subsequent ongoing medical treatment for upper respiratory and gastrointestinal infections did not satisfy six-month requirement), with *Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) (ongoing mild GBS symptoms that did not require active medical care nevertheless satisfied severity requirement).

Respondent argues that Petitioner cannot establish by preponderant evidence that she suffered the residual effects of her left shoulder injury for more than six months after her receipt of the flu vaccine. Because Petitioner received her vaccine on January 23, 2021, and alleges immediate pain (or at least pain within the 48-hour Table timeframe for a SIRVA injury), severity must be established at least through July 24, 2021 (six months after the administration date of January 23, 2021). But as noted described below, the record does not establish that the pain that is documented in March 2021 likely persisted beyond July 24, 2021.

On March 7, 2021, approximately 47 days after receiving the January 23, 2021 flu vaccination, Ms. Hagos attended a telehealth visit with an urgent care facility to complain

of her left shoulder pain. The record is then silent regarding her left shoulder injury for the next 12 months. In the interim period, Ms. Hagos had more than six (6) telehealth and in-person visits for various symptoms and complaints, including a *right* shoulder injury. These visits included establishing care with a new PCP, Dr. Kalimuthu, to report impacted ear wax and acne (Ex. 7 at 37 -July 9, 2021 visit), and an in-person visit to address left foot issues during an annual exam (Ex. 7 at 27, 31) (August 6, 2021 x-ray; August 10, 2021 visit). Petitioner did not mention any left shoulder pain at any of these visits. See Ex. 7 at 27, 31, 37. In addition, the records show that Ms. Hagos twice reported *right* shoulder issues before she raised any concerns about her left shoulder. Ex. 7 at 11 (January 28, 2022 visit with Dr. Matha); Ex. 7 at 5 (February 16, 2022 visit with Dr. Wong). Although Ms. Hagos sought to amend Dr. Matha's notes to reflect that she actually complained about her left shoulder *(see* Exs. 12-13), a subsequent treater wrote back confirming that Petitioner had described *right* shoulder issues during these visits. Ex. 7 at 11 (Dr. Matha's notes); Ex. 7 at 5.

The gap in the record between Ms. Hagos's first visit for her left shoulder pain and her subsequent visit a year later, coupled with the fact that she had many intervening visits where she could have complained of left shoulder pain, is simply too long, and too silent, for me to conclude that six months of severity is met in this case.

Other evidence in this case further corroborates how unlikely it is that Petitioner's alleged SIRVA not only could meet the Act's severity requirement, but was not all that severe in terms of pain significance. For example, even after Ms. Hagos complained of left shoulder pain in March 2022 (after this case was filed), and received a referral to physical therapy, she did not participate in any physical therapy until another 16 months later on July 24, 2023. And during those 16 months, Petitioner saw numerous medical providers and attended physical therapy for other medical conditions.

In addition, Ms. Hagos received three COVID-19 vaccines at the end of 2021 and in 2022, all in her *left* deltoid (COVID-19 vaccinations administered on September 2, 2021, September 24, 2021, and May 4, 2022 - Ex. 8 at 3). If Ms. Hagos continued to experience left shoulder pain, she could have received the COVID-19 vaccines in her right shoulder and participated in physical therapy as her doctor directed. At the very least, she would have likely been seen sooner to address her complaints. In addition, the fact that Ms. Hagos received not one, but *three additional vaccines in her left shoulder*, in the intervening period of time when she could have sought care for her left shoulder further solidifies the conclusion that she was not experiencing left shoulder pain from her January 23, 2021 during that time.

The sworn declarations do little to cure the evidentiary deficiencies with respect to severity. The facts in this case are similar to *Black v. Sec'y of Health & Human Servs*, No. 21-009V, 2023 WL 4446500 (Fed. Cl. Spec. Mstr. May 22, 2023). The *Black* petitioner received a flu vaccine in his left shoulder and then suffered documented shoulder pain for approximately three months, from October 31, 2019, to January 29, 2020. *Id*. at *1. Mr. Black had an appointment with his urologist for an unrelated condition in March 2020, during which "[n]o comment was made about shoulder pain." *Id*. at *2. Thereafter, the petitioner did not seek treatment for his left shoulder again until July 7, 2021, more than 17 months after his last appointment for treatment of his shoulder. *Id*. In that case, I explained that, although in many cases I had allowed that,

> the intervention of the Pandemic can reasonably be understood to have caused individuals to put off treatment, especially in the spring of 2020, the gap in this case is too large to be excused for this reason – especially since Petitioner's cessation of treatment began in late-January 2020, and thus somewhat before the real initial impact of the Pandemic began.

Here, as I articulated in the *Black* case, the 12-month gap in the record during which time Ms. Hagos did not seek medical care for her allegedly persistent left shoulder pain "[was] too large to ignore" for her claim to meet the six-month severity requirement. A petitioner cannot establish the length or ongoing nature of an injury solely through personal statements but rather must "submit supporting documentation which reasonably demonstrates that the alleged injury or its sequelae lasted more than six months . . ." *Black v. Sec'y of Health & Hum. Servs*., 33 Fed. Cl. 546, 550 (1995), aff'd, 93 F.3d (Fed. Cir. 1996). Ms. Hagos had less than two months of documented treatment for left shoulder issues, and then there is no mention of shoulder pain for the next 12 months. In the intervening time, she sought treatment for various medical concerns, during which she could have sought care for her left shoulder and failed to do so. Thus, I find that there is insufficient evidence to support a finding that Ms. Hagos suffered the residual effects or complications of her alleged left-sided SIRVA for more than six months after administration of the flu vaccine.

## Conclusion

Based on the entire record in this case, I find that Petitioner has failed to prove by preponderant evidence that her injury or its residual effects lasted more than six months. Accordingly, Petitioner has not established entitlement to an award of damages (under the Table or causation-in-fact version of the claim), and I must DISMISS the claim.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[3]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

[3] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by each filing (either jointly or separately) a notice renouncing their right to seek review.